IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

MARCUS LEE BENITEZ,           §
TDCJ #1985845,                §
                              §
            Petitioner,       §
                              §
v.                            §
                              §    CIVIL ACTION NO. H-18-2958
LORIE DAVIS, Director,        §
Texas Department of Criminal  §
Justice - Correctional        §
Institutions Division,        §
                              §
            Respondent.       §

<u>**AMENDED MEMORANDUM OPINION AND ORDER**</u>

Marcus Lee Benitez (TDCJ #1985845) filed a Petition for a Writ of Habeas Corpus By a Person in State Custody ("Petition") (Docket Entry No. 1) to challenge an aggravated robbery conviction entered against him in 2015. In a Memorandum Opinion and Order entered on March 21, 2019, the court granted Respondent [Lorie] Davis's Motion for Summary Judgment after finding that the Petition was untimely and entered a Final Judgment dismissing this action as barred by the governing one-year statute of limitations (Docket Entry Nos. 27, 28). On September 24, 2019, the court set aside the Final Judgment and vacated the Memorandum Opinion and Order under Rule 59(e) of the Federal Rules of Civil Procedure after considering post-judgment briefing from both parties (Docket Entry No. 53).

Now pending is Respondent Davis's Amended Motion for Summary Judgment with Brief in Support ("Respondent's Amended MSJ") (Docket

Entry No. 58), which presents additional evidence and argues that the Petition must be dismissed because it is barred by the one-year statute of limitations on federal habeas review. Benitez has filed Petitioner's Response to Respondent's Amended Motion for Summary Judgment ("Petitioner's Response")(Docket Entry No. 59) and Petitioner's Motion in Opposition to Respondent's Amended Motion for Summary Judgment ("Petitioner's Motion in Opposition") (Docket Entry No. 62).[1] After considering all of the pleadings, the state court records, and the applicable law, the court will grant Respondent's Amended MSJ and will dismiss this action for the reasons explained below.

## I. Background and Procedural History

In 2014 a grand jury in Harris County, Texas, returned an indictment against Benitez in Cause Number 1413994, charging him with aggravated robbery of an elderly person.[2] The indictment was enhanced for purposes of punishment with allegations showing that Benitez was a habitual offender who had at least two prior felony convictions for burglary of a habitation and assault on a family

---

[1]Benitez has filed two substantially similar copies of Petitioner's Motion in Opposition (Docket Entry No. 60, 62). Because the submissions are nearly identical, the court will refer only to the most recently filed version of Petitioner's Motion in Opposition (Docket Entry No. 62).

[2]See Indictment, Docket Entry No. 19-7, p. 16. For purposes of identification, all page numbers refer to the pagination imprinted at the top of the page by the court's Electronic Case Filing ("ECF") system.

member.[3]  After the indictment was returned the State gave notice of its intention to introduce evidence of an extraneous offense of burglary of a habitation that was committed by Benitez as well as several additional felony convictions that had been entered against him previously for burglary of a habitation, burglary of a building, multiple counts of theft, and more than one assault.[4]

At trial the State presented evidence that the charged offense took place on January 6, 2014.[5]  Shortly after the offense occurred the elderly victim described her attacker to a forensic artist, whose sketch was consistent with a photograph of Benitez.[6]  On January 10, 2014, police located the truck that Benitez used during the offense based on descriptions given by the victim and a neighbor, who witnessed the victim's attacker flee the scene.[7]  The victim identified Benitez in a video lineup that same day and again in open court during trial as the man who assaulted her by repeatedly striking her in the head after robbing her home.[8]

---

[3]_Id._

[4]Notice of Intent to Use Evidence of Prior Convictions and Extraneous Offenses, Docket Entry No. 19-7, pp. 22-23.

[5]Court Reporter's Record, vol. 3, Docket Entry No. 19-10, pp. 63, 115.

[6]_Id._ at 48-53, 56-58; State's Exhibit 20, Docket Entry No. 19-13, p. 45.

[7]Court Reporter's Record, vol. 3, Docket Entry No. 19-10, at 18-19, 39-46, 117-18.

[8]_Id._ at 98-101, 117-25.  According to the police offense (continued...)

A jury in the 262nd District Court for Harris County found Benitez guilty as charged after deliberating for less than 35 minutes.[9] After the guilty verdict was entered, Benitez accepted a plea agreement as to punishment.[10] Consistent with that agreement, Benitez admitted that the enhancement allegations were "true" and the trial court sentenced him to 35 years' imprisonment on March 2, 2015.[11]

On September 29, 2015, Benitez's appeal was dismissed for want of jurisdiction because he expressly waived his right to appeal as part of the plea agreement.[12] See Benitez v. State, No. 01-15-00262-CR, 2015 WL 5769948, at *1-2 (Tex. App. — Houston [1st Dist.] Sept. 29, 2015). Benitez did not file a petition for discretionary

---

[8](...continued)
report submitted in support of the initial charging instrument, Benitez was arrested on January 9, 2014, after committing a similar robbery. See Complaint, Docket Entry No. 19-7, pp. 6-7. He was placed into the lineup because the offenses were similar in nature and close in proximity. The victim in that extraneous offense also positively identified Benitez in the lineup as the suspect who attacked her. See id. at 7. None of this information was introduced at trial due to a motion in limine by defense counsel. See Court Reporter's Record, vol. 3, Docket Entry No. 19-10, p. 6.

[9]Court Reporter's Record, vol. 3, Docket Entry No. 19-10, p. 159; Harris County Criminal Docket Sheet for Cause No. 1413994, Docket Entry No. 19-7, p. 349 (reflecting that the jury retired to deliberate at 3:45 p.m. on March 2, 2015, and returned to the courtroom shortly thereafter at 4:20 p.m. to announce their verdict).

[10]Court Reporter's Record, vol. 4, Docket Entry No. 19-11, p. 5.

[11]Id. at 6-8.

[12]Id. at 7-8.

review with the Texas Court of Criminal Appeals although he obtained an extension of time to do so, which expired on December 28, 2015.[13]

On September 27, 2016, Benitez signed and dated an Application for a Writ of Habeas Corpus Seeking Relief from Final Felony Conviction Under Code of Criminal Procedure, Article 11.07 ("State Habeas Application").[14] The record reflects that Benitez's State Habeas Application was accompanied by a Motion for Evidentiary Hearing and Applicant's Brief for 11.07 Application, which included numerous exhibits.[15] The State Habeas Application and its supporting materials were not received by the Harris County District Clerk's Office, however, until nearly four months later on January 24, 2017, where those pleadings were stamped as filed on January 25, 2017.[16]

In his state court habeas proceeding, Benitez raised numerous claims of ineffective assistance of counsel by his trial and

---

[13]Postcard, Docket Entry No. 19-5, p. 1 (advising Benitez that his extended time to file a petition for discretionary review expired on December 28, 2015).

[14]State Habeas Application, Docket Entry No. 19-22, p. 23.

[15]Motion for Evidentiary Hearing, Docket Entry No. 19-22, pp. 42-44; Applicant's Brief for 11.07 Application, Docket Entry No. 19-22, pp. 45-205.

[16]Letter from Harris County District Clerk Chris Daniel, dated January 25, 2017, Docket Entry No. 19-22, p. 207 (stating that the State Habeas Application was received "1/24/17")

appellate attorneys.[17]  Benitez argued further that there was no evidence to support his wrongful conviction.[18]  The state habeas corpus court, which also presided over the trial, entered detailed findings of fact and concluded that Benitez was not entitled to relief.[19]  The Texas Court of Criminal Appeals agreed and denied relief without a written order on findings made by the state habeas corpus court on November 22, 2017.[20]

Benitez contends that he did not receive actual notice that his State Habeas Application was denied by the Texas Court of Criminal Appeals until August 8, 2018, when he received a letter from the Texas State Law Library advising him of the adverse decision.[21]  The respondent has provided records of incoming mail from the prison mail room at the unit where Benitez was assigned and concedes that he "may not" have received notice of the adverse ruling until August 8, 2018.[22]

On August 22, 2018, Benitez executed the pending federal

_____

[17]State Habeas Application, Docket Entry No. 19-22, pp. 12-21, 25-29, 32-39.

[18]Id. at 30-31.

[19]State's Proposed Findings of Fact, Conclusions of Law, and Order, Docket Entry No. 19-22, pp. 254-64.

[20]Action Taken on Writ No. 37,215-02, Docket Entry No. 19-15, p. 1.

[21]Letter dated July 23, 2018, from the Texas State Law Library, Docket Entry No. 32, p. 7.

[22]Respondent Davis's [Second] Response to This Court's Order Dated March 29, 2019, Docket Entry No. 43, p. 1.

habeas corpus Petition under 28 U.S.C. § 2254, which this court received on August 27, 2018.[23] In that Petition, which Benitez has supplemented with additional allegations, he raises the following grounds for relief:

1. He was denied effective assistance of counsel before and during his trial.

2. There was "no evidence" to support his conviction.

3. He was denied due process in connection with procedures used to identify him prior to trial and in court.

4. He is actually innocent of the offense of aggravated robbery.

5. The State erred by misleading the jury to believe that he committed the offense alone.[24]

The respondent argues that the Petition must be dismissed as barred by the governing one-year statute of limitations on federal habeas corpus review.[25]

---

[23]Petition, Docket Entry No. 1, p. 11; Petition (Continuation), Docket Entry No. 1-3, p. 32.

[24]See Petition, Docket Entry No. 1, pp. 6-8; Petition (Continuation), Docket Entry No. 1-3, pp. 1-32; Petitioner's Brief Under 28 U.S.C. § 2254(d)(1)(2), Docket Entry No. 4., pp. 1-35; Supplement, Docket Entry No. 11, pp. 2-11; Supplement, Docket Entry No. 15, pp. 2-34.

[25]Respondent's Amended MSJ, Docket Entry No. 58, pp. 1-4. In making this argument, the respondent incorporates by reference portions of the previously filed Respondent Davis's Motion for Summary Judgment with Brief in Support ("Respondent's MSJ"), Docket Entry No. 18, pp. 7-15, and other submissions in response to the court's order for supplemental briefing and mail log records, including Respondent Davis's Response to This Court's Order Dated March 29, 2019, Docket Entry No. 39, and Respondent Davis's [Second] Response to This Court's Order Dated March 29, 2019,
(continued...)

## II. **Discussion**

### A. **The One-Year Statute of Limitations**

According to the Antiterrorism and Effective Death Penalty Act of 1996 (the "AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214 (1996), all federal habeas corpus petitions filed after April 24, 1996, are subject to a one-year limitations period found in 28 U.S.C. § 2244(d), which runs from the latest of —

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1). It is undisputed that the limitations period began to run in this case no later than December 28, 2015, when Benitez's extended time to file a petition for discretionary review by the Texas Court of Criminal Appeals expired. _See_ _Roberts v. Cockrell_, 319 F.3d 690, 694 (5th Cir. 2003) (observing that a

---

[25](...continued)
Docket Entry No. 43.

conviction becomes final for purposes of § 2244(d)(1)(A) "when the time for seeking further direct review in the state court expires"). That date triggered the AEDPA statute of limitations under § 2244(d)(1)(A), which expired one year later on December 28, 2016. The federal Petition that was executed by Benitez on August 22, 2018, is late by 602 days and is therefore barred by the statute of limitations unless a statutory or equitable exception applies.

**B.   The Availability of Tolling Under 28 U.S.C. § 2244(d)(2)**

Under 28 U.S.C. § 2244(d)(2), the time during which a "properly filed application for State post-conviction or other collateral review" is pending shall not count toward the limitations period on federal habeas review. Benitez maintains that he is entitled to statutory tolling under § 2244(d)(2) from the date that he signed his State Habeas Application and surrendered it to prison mail room personnel on September 27, 2016, until the date that the Texas Court of Criminal Appeals denied relief 421 days later on November 22, 2017.[26] Although Benitez acknowledges that his State Habeas Application was not received by the Harris County District Clerk's Office until January 24, 2017, he contends that his State Habeas Application should be treated as though it were filed on the date it was signed and placed in the

---

[26]Petitioner's Motion in Opposition, Docket Entry No. 62, pp. 1-9.

-9-

prison mail system under the mailbox rule.[27]

In <u>Houston v. Lack</u>, 108 S. Ct. 2379, 2382-83 (1988), the Supreme Court held that a <u>pro</u> <u>se</u> prisoner's notice of appeal under Federal Rule of Appellate Procedure 4(a)(1) is deemed filed as of the date the notice is delivered to prison officials for mailing to the clerk of court. The Supreme Court explained that the prison mailbox rule was necessary because "<u>pro</u> <u>se</u> prisoners have no control over delays between the prison authorities' receipt of the notice and its filing, and their lack of freedom bars them from delivering the notice to the court clerk personally." <u>Id.</u> at 2384; <u>see also</u> <u>United States v. Johnson</u>, 125 S. Ct. 1571, 1576 n.2 (2005) (characterizing the holding in <u>Houston v. Lack</u> as the "so-called prison mailbox rule").

The holding in <u>Houston</u> was eventually codified in Rule 3(d) of the Rules Governing Section 2254 Cases in the United States District Courts (the "Habeas Rules").[28] <u>See</u> <u>also</u> Fed. R. App. P. 4(c)(1) and 25(a)(2)(C) (adopting the prison mailbox rule for inmate filings in federal appellate courts). Provided that the prisoner uses "the institution's internal mailing system" in compliance with Rule 3(d) of the Habeas Rules,[29] his pleadings are

---

[27]<u>Id.</u> at 1-3.

[28]The prison mailbox rule is also codified in Rule 3(d) of the Rules Governing Section 2255 Proceedings for the United States District Courts.

[29]Rule 3(d) provides: "A paper filed by an inmate confined in
(continued...)

considered filed under the prison mailbox rule on the date "he delivers the papers to prison authorities for mailing." <u>Spotville v. Cain</u>, 149 F.3d 374, 378 (5th Cir. 1998). The Fifth Circuit has extended the prison mailbox rule to include post-conviction habeas corpus applications filed in Texas. <u>See</u> <u>Richards v. Thaler</u>, 710 F.3d 573, 578-79 (5th Cir. 2013).

There are exceptions in which the prison mailbox rule does not apply. A prisoner is not entitled to benefit from the prison mailbox rule if he has failed to properly stamp or address his outgoing mail or to comply with "reasonable prison regulations governing prisoner mail[.]" <u>Medley v. Thaler</u>, 660 F.3d 833, 837 (5th Cir. 2012) (internal quotation marks and citations omitted). Likewise, a prisoner cannot invoke the prison mailbox rule if his pleadings were submitted through an outside intermediary or third-party. <u>See</u> <u>Dison v. Whitley</u>, 20 F.3d 185, 187 (5th Cir. 1994) (holding that a prisoner's use of an unknown agent to file his documents with the court does not trigger the prison mailbox rule articulated in <u>Houston v. Lack</u>, 108 S. Ct. 2379 (1988)) (citing <u>Wilder v. Chairman of the Cent. Classification Bd.</u>, 926 F.2d 367, 370 (4th Cir. 1991)); <u>see</u> <u>also</u> <u>Knickerbocker v. Artuz</u>, 271 F.3d 35, 37 (2nd Cir. 2001) (citations omitted).

---

[29](...continued)
an institution is timely if deposited in the institution's internal mailing system on or before the last day for filing. If an institution has a system designed for legal mail, the inmate must use that system to receive the benefit of this rule."

A pro se prisoner has the burden to prove that he is entitled to benefit from the mailbox rule and that his pleadings were properly submitted for filing in a timely manner. See United States v. Duran, 934 F.3d 407, 412 (5th Cir. 2019). If the prisoner meets his burden to prove that the prison mailbox rule applies and that his submission is timely, the burden then shifts to the State to prove "untimeliness" by presenting competent contradictory evidence. Ray v. Clements, 700 F.3d 993, 995 (7th Cir. 2012).

As noted above in the procedural history of this case, the record reflects that Benitez signed and dated his State Habeas Application on September 27, 2016.[30] The record also confirms that Benitez's State Habeas Application was not received by the Harris County District Clerk's Office until January 24, 2017.[31] This is significant because Benitez's deadline to seek federal habeas relief under the AEDPA expired on December 28, 2016. Where a petitioner files his state post-conviction petition after the AEDPA deadline for seeking federal review has lapsed, the state petition does not operate to toll the one-year limitations period under § 2244(d)(2). See Richards v. Thaler, 710 F.3d 573, 576 (5th Cir. 2013) (citing Scott v. Johnson, 227 F.3d 260, 263 (5th Cir. 2000)). Thus, Benitez cannot show that he is entitled to statutory tolling

---

[30]State Habeas Application, Docket Entry No. 19-22, pp. 7, 23.

[31]Letter from Harris County District Clerk Chris Daniel, dated January 25, 2017, Docket Entry No. 19-22, p. 207.

under § 2244(d)(2) unless he demonstrates that the prison mailbox rule applies to his State Habeas Application, which he claims to have surrendered to prison mail room personnel for mailing on September 27, 2016.

Benitez has provided his own "Affidavit" stating that he took his State Habeas Application to the mail room at his assigned prison unit on the date he signed it, September 27, 2016, where it was weighed by an unidentified "mailroom lady," who told Benitez it would need 24 stamps.[32] Benitez reportedly affixed the stamps to the envelope and handed it back to her for mailing to the Harris County District Clerk.[33]

The Fifth Circuit and other courts have held that a prisoner's uncorroborated assertion that he placed his pleadings in the prison mail system in a timely manner is insufficient to meet his burden of proof. See Duran, 934 F.3d at 413 (finding that the prisoner was not entitled to benefit from the mailbox rule based on his

---

[32]Affidavit of Petitioner Marcus Lee Benitez ("Benitez Affidavit"), Docket Entry No. 46, p. 1. The Affidavit is not notarized, but includes an "Unsworn Declaration" under "penalty of perjury that the statements made . . . are true and correct." Id. This complies with 28 U.S.C. § 1746(2) (permitting unsworn declarations to substitute for an affiant's oath if the statements were made "under penalty of perjury" and verified as "true and correct"). See Ion v. Chevron USA, Inc., 731 F.3d 379, 382 n.2 (5th Cir. 2013) (citations omitted).

[33]Benitez Affidavit, Docket Entry No. 46, p. 1. Although Benitez states that he placed his pleadings in the mail at the "Clemens Unit," which is a prison facility located in Brazoria County, the record confirms that he was assigned to the Bill Clemens Unit in Amarillo for the entire period of time relevant to his state habeas proceeding.

"bare assertion that he placed his motion in a housing unit mailbox"); see also Ray, 700 F.3d at 995 (observing that where a pro se prisoners filing is not received by the state court as alleged "the habeas petitioner must produce some evidence to support his sworn statement of timeliness"); Romero-Barillas v. United States, No. 5:19-cv-58, 2020 WL 1000167, at *3 (S.D. Tex. March 2, 2020) (finding that a prisoner's "unsubstantiated assertion" that he surrendered his motion to prison mail room personnel was insufficient to meet his burden to show that the mailbox rule applied) (citing Duran, 934 F.3d at 413).[34]

The court granted Benitez's request for discovery in the form of mail log records to support his claim that he tendered his State Habeas Application to mail room officials on September 27, 2016, and gave both parties an opportunity to supplement the record with evidence about when the State Habeas Application was filed.[35] In compliance with that order the respondent has provided the relevant prison mail room procedures outlined in Chapter 3 of the Uniform Offender Correspondence Rules,[36] which are printed in TDCJ's

---

[34]Corroboration is also necessary in other contexts where proof of mailing is required. See, e.g., Sorrentino v. I.R.S., 383 F.3d 1187, 1194-95 (10th Cir. 2004) (holding that, absent independent proof such as "a postmark or dated receipt," a party was not entitled to the mailbox-rule presumption based solely on his "uncorroborated self-serving testimony" of mailing).

[35]Order Granting Relief From Judgment, Docket Entry No. 53, pp. 6-10.

[36]The court is familiar with the Uniform Offender (continued...)

Offender Orientation Handbook.[37] According to these procedures mail room personnel are required to deliver all outgoing mail to a United States Postal Service employee within two business days of receipt, except for weekends or holidays.[38]

The respondent has also provided mail logs recorded by prison mail room personnel in compliance with the Uniform Offender Correspondence Rules, showing all outgoing legal mail from the facility where Benitez was assigned (the Bill Clements Unit) for the period of time relevant to his state habeas proceeding.[39] There is no entry in those records showing that Benitez placed any legal

---

[36](...continued)
Correspondence rules referenced by the respondent, which were thoroughly litigated in a class action lawsuit that resulted in a settlement agreement and consent decree enforced in this district. See Guajardo v. Estelle, 432 F. Supp. 1373 (S.D. Tex. 1977), aff'd in part and rev'd in part by Guajardo v. Estelle, 580 F.2d 748 (1978); see also Guajardo v. Estelle, 568 F. Supp. 1354 (S.D. Tex. 1983) (approving the parties' settlement agreement); Guajardo v. Texas Dep't of Criminal Justice, 363 F.3d 392 (5th Cir. 2004) (affirming the decision to terminate the consent decree).

[37]Exhibit B to Respondent Davis's Response to This Court's Order Dated March 29, 2019, Docket Entry No. 39-3, p. 2 (page 119 of Offender Orientation Handbook outlining the procedures for inmates to use the prison mail system).

[38]Id.

[39]The records have been submitted piecemeal in several different docket entries: Exhibit A, Part One, Docket Entry No. 43-1, pp. 2-38 (outgoing legal mail records for September 19, 2016, through September 30, 2016); Exhibit A, Part Two, Docket Entry No. 43-2, pp. 2-60 (outgoing legal mail for January 16, 2017, through January 30, 2017); Exhibit C, Docket Entry No. 58-1, pp. 2-313 (outgoing legal mail records for October 1, 2016, through January 5, 2017); Exhibit D, Docket Entry No. 61-1, pp. 2-61 (outgoing legal mail records for January 5, 2017, through January 16, 2017).

mail addressed to the Harris County District Clerk's Office in the prison mail system between September 27, 2016, and January 24, 2017.

Benitez argues that the absence of a mail log record is insufficient to refute the date on which he claims to have surrendered his State Habeas Application to prison mail room personnel.[40] On the contrary, the Supreme Court has recognized that mail logs can "readily dispute a prisoner's assertion that he submitted his papers on a different date." Houston, 108 S. Ct. at 2384-85; see also Jeffries v. United States, 748 F.3d 1310, 1314-15 (11th Cir. 2014) (observing that evidence about prison mail room practices and mail log records showing no entry on the alleged date of filing were sufficient to meet the government's burden to demonstrate untimeliness). A petitioner's unsupported affidavit is insufficient to establish that his filing was timely where his claim is contradicted by mail logs. See Posey v. Rogers, No. 13-285, 2018 WL 265584, at *1 (M.D. La. June 26, 2014) (rejecting a habeas petitioner's sworn affidavit as "conclusory and unsupported by the record" where it was contradicted by prison mail logs).

Benitez speculates that prison mail room personnel failed to record the date on which his State Habeas Application was sent,

---

[40]Petitioner's Motion in Opposition, Docket Entry No. 62, pp. 3, 4-5.

arguing that this "error" is not his fault.[41]  Benitez provides no
evidence in support of this theory and he does not otherwise show
that mail room personnel at his prison unit were not logging legal
mail as required by the Uniform Offender Correspondence Rules.  See
Turner v. Thaler, No. 3:09-cv-0504, 2011 WL 6259637, at *2 (N.D.
Tex. Nov. 21, 2011) (rejecting a habeas petitioner's uncorroborated
claim that prison mail logs were "falsified" as conclusory).
Absent such evidence, the mail logs are entitled to the presumption
of regularity that applies to official records.  See Webster v.
Estelle, 505 F.2d 926, 929-30 (5th Cir. 1974)("Official records are
entitled to a presumption of regularity.") (citations omitted);
Sexton v. Gibbs, 327 F. Supp. 134, 138 (N.D. Tex. 1970)
(recognizing that there is "a presumption of regularity which
supports official acts of public officers, and in the absence of
clear evidence to the contrary, courts presume that they have
properly discharged their official duties"); Willis v. Dretke, No.
3:04-cv-2020, 2005 WL 701006, at *1 (N.D. Tex. March 24, 2005)
("The mail log is entitled to a presumption of regularity.").

    Federal district courts in Texas routinely rely on mail logs
recorded under the system established by the Uniform Offender
Correspondence Rules to determine filing dates in prisoner cases.
See, e.g., Walker v. Stephens, No 4:11-cv-1055, 2015 WL 7306566, at
*1 (N.D. Tex. Sept. 28, 2015) (reviewing mail log records following

---

[41]Id. at 3, 5-6.

remand by the Fifth Circuit for findings on whether a notice of appeal was timely); <u>Florence v. Crain</u>, No. V-06-cv-0045, 2007 WL 4438144, at *1 (S.D. Tex. Dec. 17, 2007) (reviewing mail logs to determine the timeliness of a prisoner's post-judgment motion under Fed. R. Civ. P. 59(e)); <u>Gray v. Dretke</u>, No. 3:04-cv-2295, 2005 WL 1133860, at *3 (N.D. Tex. May 10, 2005) ("The best evidence of when petitioner deposited his writ in the prison mail system are the prison mail logs.").[42] Benitez has not alleged specific facts or offered any evidence that calls into question the reliability of the mail logs submitted by the respondent in this case.

Noting that there is no proof in the mail logs showing that Benitez used the prison mail system to submit his State Habeas Application, the respondent argues that he likely gave his pleadings to an outside third-party for mailing to the state court.[43] In support of that argument the respondent points to evidence in the state court record, which shows that Benitez's State Habeas Application and supporting materials were delivered to

---

[42]In this court's own experience the Fifth Circuit routinely remands prisoner cases to determine the timeliness of a notice of appeal and relies on findings that are based on prison mail logs from TDCJ when making decisions about its jurisdiction. Recent examples include: <u>Romero v. Davis</u>, No. 17-20659 (5th Cir. Feb. 21, 2018) (Docket Entry No. 38) in <u>Romero v. Davis</u>, H-17-cv-0387 (S.D. Tex.) (dismissing the appeal in a per curiam opinion where findings based on prison mail logs showed that the notice of appeal was not timely submitted); <u>Beach v. Armatys</u>, No. 19-20666 (5th Cir. March 31, 2020) (Docket Entry No. 35) in <u>Beach v. Armatys</u>, No. H-19-cv-1278 (S.D. Tex.) (same).

[43]Respondent Davis's [Second] Response to This Court's Order Dated March 29, 2019, Docket Entry No. 43, pp. 3-4.

-18-

the Harris County District Clerk's Office in a "Priority Mail" envelope that is post-marked January 16, 2017.[44] The respondent confirms that Priority Mail is not available to inmates through the Texas prison mail system.[45]

Benitez does not dispute that the prison mail system established by TDCJ is the only way for state prisoners to access the U.S. Mail and that Priority Mail is not available to inmates.[46] He also concedes that the prison mail system would have no record of mail sent by an outside third-party on behalf of a prisoner.[47] Although Benitez appears to suggest that prison personnel diverted his State Habeas Application and "re-packed" his pleadings in a Priority Mail envelope,[48] he presents no proof of this and the

---

[44]Envelope, Docket Entry No. 19-22, p. 206.

[45]Respondent Davis's [Second] Response to This Court's Order Dated March 29, 2019, Docket Entry No. 43, pp. 3-4.

[46]Petitioner's Motion in Opposition, Docket Entry No. 62, p. 2.

[47]Id. at 2.

[48]Id. at 7. Benitez has denied using Priority Mail, although he has not done so in a sworn pleading under penalty of perjury for purposes of 28 U.S.C. § 1746. He has argued that the envelope found in the state court record is not sold at the prison commissary and that the hand-written address was made using the type of pen or marker that was likewise "not issued to him" or available at within the prison system. See Petitioner's Motion Requesting Further Discovery/Disclosure in Response to State's Response (DE 43), Docket Entry No. 45, p. 4. This argument is unavailing, however, because an outside intermediary would not have needed to use supplies from the prison commissary when placing an item in Priority Mail at a United States Post Office or other outside mailing facility.

record does not support his assertion. In that regard, the court notes that Benitez was assigned to the Clements Unit in Amarillo, but the post-mark on the Priority Mail envelope reflects that it was sent locally from "Houston TX 77002,"[49] which is hundreds of miles away. The record in this case also reflects that Benitez's federal habeas Petition was also submitted using Priority Mail.[50]

This evidence indicates that Benitez's State Habeas Application was sent to the Harris County District Clerk's Office through Priority Mail by someone unaffiliated with the Clements Unit and that it was not submitted through the prison mail system. See Gillam v. Davis, No. 3:15-cv-2692, 2017 WL 3447866, at *10 (N.D. Tex. July 14, 2017) (holding that the mailbox rule did not apply where there were no mail logs reflecting that items were mailed by the petitioner and the envelope for his pleadings shows that it was sent from a different zip code from where the prisoner was located) (citing Griffith v. Davis, No. 3:15-cv-1282, 2016 WL 8285809, at *2 (N.D. Tex. Oct. 26, 2016) (inmate was not entitled to the mailbox rule where prison logs did not show that he mailed anything to the court during the relevant time period and the postmark was from Houston, Texas, but the inmate was incarcerated

---

[49]Envelope, Docket Entry No. 19-22, p. 206.

[50]Envelope, Docket Entry No. 1-2, p. 1 (reflecting that Benitez's federal habeas Petition was received by the Clerk's Office in an envelope marked "Priority Mail," which expressly states along the far left-hand side that it is "provided solely for use in sending Priority Mail").

in Huntsville), recommendation adopted, 2017 WL 661398 (N.D. Tex. Feb. 17, 2017)).

Where a prisoner does not use the institutional mail system or has an outside intermediary submit pleadings on his behalf, the prison mailbox rule does not apply. See Dison, 20 F.3d at 187; see also Cousin v. Lensing, 310 F.3d 843, 847 & n.2 (5th Cir. 2002) (observing that the prison mailbox rule does not extend to prisoners who are represented by counsel or to submissions filed on a prisoner's behalf by a "non-attorney intermediary"); Gray v. Thaler, No. 3:09-cv-0304, 2009 WL 3614458, at *3 (N.D. Tex. Oct. 30, 2009) (observing that the mailbox rule does not apply to pleadings submitted by a friend or family member on a prisoner's behalf) (citations omitted).

Benitez has failed to come forward with any independent evidence to support his claim that he placed his State Habeas Application in the prison mail system on September 27, 2016. Absent mail logs or other competent evidence to corroborate his claim that he placed his State Habeas Application in the prison mail system on September 27, 2016, Benitez has not shown that the prison mailbox rule applies or that this state court habeas proceeding was filed before his federal statute of limitations expired on December 28, 2016. As a result, his state habeas proceeding does not toll the statute of limitations pursuant to 28 U.S.C. § 2244(d)(2).

**C.   There Is No Other Basis for Statutory or Equitable Tolling**

Benitez does not demonstrate that there is any other basis for statutory tolling under 28 U.S.C. § 2244(d).  Benitez does not assert that he was subject to state action that impeded him from filing his Petition in a timely manner.  <u>See</u> 28 U.S.C. § 2244(d)(1)(B).  Likewise, none of his claims are based on a constitutional right that has been newly recognized and made retroactive by the Supreme Court.  <u>See</u> 28 U.S.C. § 2244(d)(1)(C). In addition, none of his claims raise a constitutional issue that is based on a new "factual predicate" that could not have been discovered previously if the petitioner had acted with due diligence.  <u>See</u> 28 U.S.C. § 2244(d)(1)(D).

Equitable tolling is available at the court's discretion where a petitioner demonstrates (1) that he pursued federal review with due diligence and (2) that "'some extraordinary circumstance stood in his way' and prevented timely filing." <u>Holland v. Florida</u>, 130 S. Ct. 2549, 2562 (2010) (quoting <u>Pace v. DiGuglielmo</u>, 125 S. Ct. 1807, 1814 (2005)).  Benitez contends that he is entitled to tolling for equitable reasons because did not receive notice until August 8, 2018, that the Texas Court of Criminal Appeals denied his State Habeas Application on November 22, 2017.[51]  Once he received this notice Benitez executed his federal Petition shortly thereafter on August 22, 2018, which the court received on August

---

[51]Supplement to Brief in Opposition to Being Time-Barred, Docket Entry No. 32, p. 3.

27, 2018.[52]

The Fifth Circuit has held that long delays in receiving notice of an adverse ruling on a state habeas corpus application may warrant equitable tolling if the petitioner can demonstrate that he acted with the requisite diligence in pursuing habeas relief. See Hardy v. Quarterman, 577 F.3d 596, 598 (5th Cir. 2009) (citing Phillips v. Donnelly, 216 F.3d 508, 511 (5th Cir. 2000)); see also Jackson v. Davis, 933 F.3d 408, 412-13 (5th Cir. 2019) (observing that the diligence inquiry is "fact-specific, turn[ing] on the facts and circumstances of a particular case") (citations and internal quotation marks omitted). However, even if Benitez were entitled to tolling between the date his State Habeas Application was denied on November 22, 2017, and the date he received notice on August 8, 2018, his federal Petition would still remain untimely because the statute of limitations expired on December 28, 2016, which is well before the alleged delay occurred. Accordingly, Benitez's argument about delayed notice is unhelpful to him.

Benitez argues further that his delay should be excused for equitable reasons because he is actually innocent of the aggravated robbery offense.[53]  A free-standing allegation of actual innocence is not an "independent constitutional claim" that is actionable on

---

[52]Id.

[53]Petition, Docket Entry No. 1, p. 10.

-23-

federal habeas corpus review.  See Herrerra v. Collins, 113 S. Ct. 853, 869 (1993); see also Graves v. Cockrell, 351 F.3d 143, 151 (5th Cir. 2003) (observing that the Fifth Circuit has repeatedly held that claims of actual innocence are "not cognizable" on federal habeas review) (citations omitted)).  If proven, however, actual innocence may excuse a failure to comply with the one-year statute of limitations on federal habeas corpus review.  See McQuiggin v. Perkins, 133 S. Ct. 1924, 1928 (2013).

To be credible a habeas petitioner must support a claim of actual innocence with "new reliable evidence — whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence — that was not presented at trial." Schlup v. Delo, 115 S. Ct. 851, 865 (1995).  To prevail on such a claim a petitioner must also show "that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence."  Id. at 867.

Benitez does not support his claim with new evidence that was not available at trial or that demonstrates his actual innocence under the standard articulated in Schlup.  Benitez bases his actual innocence claim on an article that was published on February 5, 2014, which mistakenly stated that there was DNA evidence linking Benitez to the offense.[54]  Benitez appears to argue that the

_____

[54]Supplement, Docket Entry No. 11, pp. 2, 8.  Benitez points to a portion of an internet article published on February 5, 2014, by the website forwardtimesonline.com, which is entitled "Attack on
(continued...)

victim's identification of him was influenced by this article, which caused her to mistakenly believe that there was DNA linking him to the offense.[55] Benitez's argument overlooks the fact that the victim provided a description of him to the forensic sketch artist shortly after the offense occurred on January 6, 2014, and identified him in a video lineup on January 10, 2014, well before the article was published.[56]

To the extent that Benitez argues that the victim was misled by law enforcement officers before she identified him on January 10, 2014, the record shows that DNA testing of the evidence collected in his case was not completed until much later in July of 2014.[57] DNA testing excluded Benitez as a match to any biologic material collected from the victim.[58] The DNA test results were highlighted at trial, where defense counsel emphasized the lack of forensic evidence or fingerprints linking his client to the offense.[59] The jury was not persuaded by this argument and Benitez

---

[54](...continued)
Our Elderly! Who's Looking Out for Them?" Supplement, Docket Entry No. 11, pp. 8-9.

[55]Supplement, Docket Entry No. 11, p. 2.

[56]Court Reporter's Record, vol. 3, Docket Entry No 19-10, pp. 48-58, 98-101.

[57]Laboratory Report #3, Houston Forensic Science Center, Docket Entry No. 19-12, pp. 12-13.

[58]Id.

[59]Court Reporter's Record, vol. 3, Docket Entry No. 19-10, (continued...)

has not presented any new reliable evidence establishing that he was mistakenly identified by the victim as the person who assaulted her after robbing her home. Moreover, due to the overwhelming evidence against him Benitez has not shown "that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence." Schlup, 115 S. Ct. at 867. Because Benitez has not shown that he is actually innocent, he is not entitled to tolling under McQuiggin.

Although Benitez points to his status as an indigent prison inmate, it is settled that a petitioner's pro se status, incarceration, and ignorance of the law do not excuse his failure to file a timely federal habeas petition and are not grounds for equitable tolling. See Felder v. Johnson, 204 F.3d 168, 171-72 (5th Cir. 2000). The Fifth Circuit has cautioned courts "not to apply the statute of limitations too harshly," Fisher v. Johnson, 174 F.3d 710, 713 (5th Cir. 1999), but this court has reviewed the entire record and concludes that no miscarriage of justice will result from dismissing the Petition as time-barred because his claims were reviewed and rejected previously in state court.[60] For the reasons articulated by the state habeas corpus court, which also presided over Benitez's trial, his claims appear to be

---

[59](...continued)
pp. 101-03, 150-53.

[60]State's Proposed Findings of Fact, Conclusions of Law, and Order, Docket Entry No. 19-22, pp. 254-64.

entirely without merit.[61]   Because Benitez fails to otherwise establish that any exception to the AEDPA statute of limitations applies, the Respondent's Amended MSJ will be granted, and the Petition will be dismissed as untimely under 28 U.S.C. § 2244(d)(1).


## III.  **Certificate of Appealability**

Rule 11 of the Rules Governing Section 2254 Cases requires a district court to issue or deny a certificate of appealability when entering a final order that is adverse to the petitioner.   A certificate of appealability will not issue unless the petitioner makes "a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), which requires a petitioner to demonstrate "'that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.'"  Tennard v. Dretke, 124 S. Ct. 2562, 2569 (2004) (quoting Slack v. McDaniel, 120 S. Ct. 1595, 1604 (2000)).  Where denial of relief is based on procedural grounds, the petitioner must show not only that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right," but also that they "would find it debatable whether the

---

[61]See id.; see also Trial Court Writ No. 1413994-A, Clerk's Summary Sheet, Docket Entry No. 19-22, p. 2 (confirming that the judge presiding over the trial and the judge presiding over the habeas proceeding were the same).

district court was correct in its procedural ruling." <u>Slack</u>, 120 S. Ct. at 1604. For reasons set forth above, this court concludes that jurists of reason would not debate whether any procedural ruling in this case was correct or whether the petitioner states a valid claim for relief. Therefore, a certificate of appealability will not issue.

## IV. Conclusion and Order

Accordingly, the court **ORDERS** as follows:

1.  Respondent Davis's Amended Motion for Summary Judgment (Docket Entry No. 58) is **GRANTED** and Petitioner's Motion in Opposition (Docket Entry No. 62) is **DENIED**.

2.  The Petition for a Writ of Habeas Corpus By a Person in State Custody filed by Marcus Lee Benitez (Docket Entry No. 1) is **DISMISSED with prejudice**.

3.  A certificate of appealability is **DENIED**.

The Clerk shall provide a copy of this Amended Memorandum Opinion and Order to the parties.

**SIGNED** at Houston, Texas, on this 9th day of April, 2020.

_____
SIM LAKE
SENIOR UNITED STATES DISTRICT JUDGE